Cite as 2023 Ark. App. 393

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-22-570

| | |
|---|---|
| KYMIRA GANT<br><br>APPELLANT<br><br>V.<br><br><br>FIRST STEP, INC., AND RISK MANAGEMENT RESOURCES<br>APPELLEES | Opinion Delivered September 20, 2023<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. H002516]<br><br><br><br>AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Appellant Kymira Gant appeals from the Arkansas Workers' Compensation Commission's July 14, 2022, denial of her claim for additional medical treatment, temporary partial-disability benefits, wage-loss benefits, attorney's fees, and benefits pursuant to Arkansas Code Annotated section 11-9-505(a)(1) (Repl. 2012) for her workplace injury, finding that she failed to prove that she was entitled to any of the requested benefits. On appeal, Gant argues that the Commission's opinion is not supported by substantial evidence and is contrary to the facts and applicable law. We affirm.

Gant was a forty-seven-year-old female at the time of her injury and worked for First Step, Inc., as a caregiver in charge of bathing, grooming, cooking, cleaning, shopping, and performing various other tasks for clients. She sustained an admittedly compensable back injury on or about April 17, 2020, while she was taking a client shopping. Gant was trying

to load the client's wheelchair into her car when she accidentally struck the electric wheelchair control, causing the wheelchair to knock her into her car.

Gant saw a number of medical professionals during her treatment for her injury. She initially saw her family physician, Dr. Jenny Navarro, who noted that she complained of right hip pain. Gant was ultimately referred to Dr. Wayne Bruffett, a spinal specialist, when her hip pain continued unabated. Over time, Gant continued to complain of right hip pain and was treated conservatively with injections and physical therapy. Eventually, Dr. Bruffett scheduled her for an MRI, which indicated degenerative changes to her spine and a herniated disk at L5-S1. Dr. Bruffett performed successful surgery to repair the herniated disk; after a healing period, Gant's right hip pain was resolved. Gant underwent a functional capacity evaluation on January 13, 2021. She gave a very unreliable effort; the report reflects that she only had thirty-four out of fifty-five consistency measures within expected limits. The report further stated that Gant produced "low and inconsistent grip strength," "self-limiting effort," and inconsistent walking patterns. The examiner felt that she could at least do sedentary work. Dr. Bruffett gave her a disability rating of 10 percent to the body as a whole, which the Commission approved when Dr. Bruffett advised the Commission that Gant had reached MMI (maximum medical improvement). Dr. Bruffett released her to work without restrictions on June 21, 2021. However, he noted she would have some limitations.

Ms. Brooke Gilbert, First Step's HR director, provided testimony that First Step provided Gant light-duty work at the same rate of pay and hours as her job when she was injured, but she failed to come to work on many occasions. She eventually stopped coming

2

to work altogether. After her release without restrictions by Dr. Bruffett on June 21, 2021, Ms. Gilbert sent Gant two certified letters offering Gant her pre-injury job at the same rate of pay.

While being treated by Dr. Bruffett through June of 2021, Gant failed to tell Dr. Bruffett that she was involved in a motor vehicle accident on April 29, 2021, where she complained of pain in her neck, upper back, lower back and right hip. Gant petitioned the Commission to have a change of physician to Dr. Amir Qureshi because she was reporting left hip pain. Dr. Qureshi recommended additional medical treatment for left side pain.

In a letter to the commission, Dr. Bruffett stated "Gant is now seeing Dr. Qureshi for left sided symptoms. Therefore, I would say with a reasonable degree of medical certainty that the procedure which he is proposing on the left is not necessary or indicated for her Worker's Compensation injury of 4/17/2020 which resulted in right sided pain." The Commission denied her request for additional medical treatment.

In appeals involving claims for workers' compensation, this court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Galloway v. Tyson Foods, Inc.*, 2010 Ark. App. 610, at 5, 378 S.W.3d 210, 213. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* at 5, 378 S.W.3d at 213. The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm. *Id.* Where the Commission denies a claim because of the claimant's failure to meet his burden

3

of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Id.*; *see also Grothaus v. Vista Health LLC*, 2011 Ark. App. 130, 382 S.W.3d 1.

The Commission has the duty to weigh the medical evidence just as it does any other evidence, and its resolution of the medical evidence has the force and effect of a jury verdict. *Williams v. Prostaff Temps.*, 336 Ark. 510, 988 S.W.2d 1 (1999). It is within the Commission's province to weigh the totality of the medical evidence and to determine what evidence is most credible. *Minn. Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). We defer to the Commission's findings on what testimony it deems to be credible. *Id.* When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Ark. Dep't of Health v. Williams*, 43 Ark. App. 169, 863 S.W.2d 583 (1993).

I. *Additional Medical Treatment*

Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires an employer to provide an employee with medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." What constitutes reasonably necessary treatment is a question of fact for the Commission. *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, 381 S.W.3d 869. The Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force. *Id.* Furthermore, it is the Commission's duty to use its experience and expertise in translating the testimony of medical

4

experts into findings of fact and to draw inferences when testimony is open to more than a single interpretation. *Id.*

Gant's first examination by her personal physician, Dr. Jenny Navarro, after her work injury indicated only right hip pain on April 22, 2021. After conservative treatment was unsuccessful, Gant was referred to Dr. Bruffett. Dr. Bruffett opined after her MRI that she had disc herniation at L5-S1 and recommended surgery. Gant underwent a microscopic partial discectomy L5-S1 on the right side for a disc herniation that was sustained as a result of a work injury. On postsurgery follow up, Dr. Bruffett noted that Gant's nerve pain was gone. Not only does Gant have a long history of three motor vehicle accidents involving injuries to her back prior to her compensable injury, she experienced a significant motor vehicle accident on April 29, 2021, with injuries to her neck, upper back, lower back and left hip. Gant told Dr. Qureshi in her initial examination on June 29, 2021, that the pain radiates to her left leg, left knee, and left side hip. Gant admitted to Dr. Qureshi that her right hip pain had been resolved. Dr. Bruffett's undisputed medical opinion states within a degree of medical certainty that Dr. Qureshi's treatment is not related to her compensable injury.

The Commission found that Dr. Bruffett's testimony was more credible than the testimony of Gant, and Dr. Qureshi's treatment was not related to the workers'-compensation claim. Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Williams*, 43 Ark. App. 169, 863 S.W.2d 583. On the basis of these facts, there is substantial evidence to

5

support the Commission's findings that Gant failed to prove that she is entitled to additional medical treatment.

## II. *Temporary Partial-Disability Benefits*

Gant argues that Arkansas Code Ann. § 11-9-502 allows her to receive temporary partial-disability benefits for weeks ending June 20, 2020, through August 29, 2020. However, this section contemplates an employee who has returned to work but, because of a temporary partial disability, is not earning the same wages as before the injury. In this case, Gant was released by Dr. Larey to restricted duty work on June 23, 2020, and First Step, Inc., placed Gant on light-duty work answering the telephone earning the same wages and working the same hours as before her accident.

Gant's reduction in income during this period was a result of her failure to work. Gant stopped coming to her light-duty job and would explain that she was with her granddaughter or simply felt that she could not work. Gant could have made the same wages working the same number of hours performing light-duty work such as answering the phone, but she simply chose not to work. An award of temporary partial-disability benefits is appropriate during the healing period in which an employee suffers a partial incapacity to earn wages. *Dodson v. Valley Behavioral Health Systems*, 2022 Ark. App. 128, at 7 (citing *Amaya v. Newberry's 3N Mill*, 102 Ark. App. 119, 282 S.W.3d 269 (2008)). We find that there was substantial evidence to support the Commission's denial of additional total partial-disability benefits.

## III. *Wage-Loss Benefits*

Gant next argues that she is entitled to wage-loss benefits because, due to her work history and education background, she is not likely to be able to find employment other than minimum-wage heavy-manual-labor work. The Commission is charged with the duty of determining disability based on a consideration of medical evidence and other factors affecting wage loss, such as the claimant's age, education, and work experience. Motivation, postinjury income, credibility, demeanor, and a multitude of other factors are matters to be considered in claims for wage-loss-disability benefits in excess of permanent-physical impairment. *Ark. Highway & Transp. Dep't v. Work*, 2018 Ark. App. 600, 565 S.W.3d 138. When a claimant has been assigned an anatomical-impairment rating to the body as a whole, the Commission has the authority to increase the disability rating, and it can find a claimant totally and permanently disabled based on wage-loss factors. *Gibson v. Wal-Mart Assocs., Inc.*, 2012 Ark. App. 560. The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Id.* The Commission has the duty to determine disability on the basis of a consideration of medical evidence and other matters affecting wage loss, including the claimant's age, education, and work experience. *Id.* The claimant carries the burden of proving an inability to earn any meaningful wages in the same or other employment. *Id.* The claimant's motivation to return to work, or lack thereof, is a factor that can be considered when determining an employee's future earning capacity. *Meadows v. Tyson Foods, Inc.*, 2013 Ark. App. 182.

The commission found Gant's testimony evasive and lacking in credibility. Several factors indicated she was not motivated to work again. Gant's functional capacity evaluation

was deemed highly unreliable, and the examiner was clear that he thought she was not giving her best efforts on the basis of his observations. Further, she showed a lack of motivation to return to work; she did not comply with the employer's offer of light-duty work answering the phones at the same wage rate and hours she had prior to her injury. Finally, she was offered her previous position twice by the employer by certified letter at her same rate of pay and hours after Dr. Bruffett released her with no restrictions to return to work. Gant ignored the substantial efforts of her employer to provide her every possible opportunity to return to work. We find there is substantial evidence to support the Commission's finding that Gant failed to prove her ability to earn a livelihood had been affected by the injury.

IV. *Benefits Pursuant to Ark. Code Ann. § 11-9-505(a)(1)*

Gant argues that she is also entitled to benefits pursuant to section 11-9-505(a)(1) for damages against her employer for refusing to return her to work. In order to receive benefits under Ark. Code Ann. § 11-9-505(a)(1), the claimant has the burden of proving by a preponderance of the evidence that (1) she sustained a compensable injury; (2) there is suitable employment within her physical and mental limitations available with the employer; (3) the employer refused to return her to work; and (4) the employer's refusal to return her to work was without reasonable cause. *See Torrey v. City of Fort Smith*, 55 Ark. App. 226, 230, 934 S.W.2d 237, 239 (1996); *Nat'l Park Cmty. Coll. v. Castaneda*, 2018 Ark. App. 458, 558 S.W.3d 911. Gant has failed to meet her burden of proof with respect to elements (2), (3), and (4), *supra*.

8

Ms. Gilbert testified concerning First Step's light-duty work policies and procedures, and that when an injured employee is released to return to work on light duty, the company has a number of openings, and she works with the claimants to put them anywhere they are comfortable. Gant was provided light-duty work when she was released from Dr. Bruffett. Gant took the job for a short period of time but began to miss work without reasonable excuses, then stopped coming to work altogether. Ms. Gilbert testified that when a claimant is not comfortable returning to work for some reason, she immediately offers them Family Medical Leave Assistance (FMLA), which must be certified by a physician. As Gant herself admitted, when First Step offered her FMLA, she was unable to get her family physician or any other physician to place any physical limitations or restrictions on her, so she could not qualify for FMLA. Ms. Gilbert also testified that Gant was offered the opportunity in two letters to return to work in her previous position after she was released with no restrictions on January 25, 2021, but she ignored the offer. Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Williams*, 43 Ark. App. 169, 863 S.W.2d 583. The Commission found Ms. Gilbert to be a more credible witness than Gant. The Commission is not required to believe the testimony of the claimant or any other witness but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Jordan v. Tyson Foods, Inc.*, 51 Ark. App. 100, 911 S.W.2d 593 (1995); *Patterson v. Ark. Dep't of Health*, 343 Ark. 235, 33 S.W.3d 151 (2000). There is substantial evidence to support the commission's finding that claimant failed to meet her burden of proof in demonstrating the

9

respondents are liable for the payment of additional benefits pursuant to Ark. Code Ann. §
11-9-505(a)(1).

V. *Attorney's Fees*

Finally, Gant argues that the Commission erred in denying attorney's fees in this case
pursuant to Ark. Code Ann. § 11-9-715(a)(2)(B)(ii) (Repl. 2012), which provides that fees
shall be allowed only on the amount of compensation controverted and awarded. The
amounts in controversy were not awarded, so no attorney's fees accrued to the benefit of
counsel by statute. Since we are affirming the findings of the Commission as discussed
above, Gant is not entitled to attorney's fees.

Affirmed.

THYER and WOOD, JJ., agree.

*Caldwell Law Firm, P.A.*, by: *Andy L. Caldwell*, for appellant.

*Worley, Wood & Parrish P.A.*, by: *Melissa Wood*, for separate appellee First Step, Inc.